UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION TO REMAND TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA (DKT. 38)

**I.     Introduction**

On October 29, 2020, Scholz Recycling GmbH ("SRG") and Scholz Hong Kong Limited ("Scholz HK") (collectively, "Plaintiffs") brought this action against Zhou Yizhou ("Mr. Zhou"), Liu Qingxian ("Ms. Liu"), Zhou Yuan ("Ms. Zhou"), Star Achievement Group, Inc. ("Star"), Outer Marino Investments, LLC ("Outer Marino"), and Does 1 through 100 in the Los Angeles Superior Court. Dkt. 1-5. On January 13, 2021, Mr. Zhou, Ms. Liu, Ms. Zhou and Outer Marino removed the action. Dkt. 1.

On February 22, 2021, Plaintiffs filed a First Amended Complaint (the "FAC"), which is the operative one. Dkt. 18. The FAC advances two causes of action: (i) voidable transfer under Cal. Civ. Code §§ 3439 *et seq.*, and (ii) constructive trust under Cal. Civ. Code §§ 2223-24. *Id.* ¶¶ 54-67. The FAC named Mr. Zhou, Ms. Liu, Ms. Zhou, Star, Outer Marino and Does 1 through 10 as defendants. *Id.* Subsequently, Plaintiffs voluntarily dismissed the claims against Star. Dkt. 53. Consequently, the only remaining Defendants are Mr. Zhou, Ms. Liu, Ms. Zhou, Outer Marino and Does 1 through 10 (collectively, "Defendants").

On March 8, 2021, Defendants filed a "Motion to Dismiss First Amended Complaint Pursuant to Rules 12(b)(3) and 12(b)(7) and/or Compel Arbitration" (the "Second MTD" (Dkt. 23)). Pursuant to a stipulation extending the briefing schedule for the Second MTD (Dkt. 31), Plaintiffs filed an opposition to the Second MTD (the "Opposition to Second MTD" (Dkt. 37)) on April 12, 2021. Defendants filed a reply in support of the Second MTD (the "Reply ISO Second MTD" (Dkt. 46)) on May 13, 2021.

On April 12, 2021, Plaintiffs filed the present motion to remand (the "Motion to Remand" (Dkt. 38)). Defendants filed an opposition to the Motion to Remand (the "Opposition" (Dkt. 41)) on May 3, 2021, and Plaintiffs filed a reply (the "Reply" (Dkt. 49)) on May 14, 2021. Plaintiffs have incorporated by reference the arguments from their Opposition to Second MTD into the Motion to Remand. Dkt. 38 at 4.

A hearing on the Motion to Remand was held on June 14, 2021, and the Motion was taken under submission. Dkt. 56. For the reasons stated in this Order, the Motion to Remand is **DENIED**.

**II.     Factual Background**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

A. The Parties

The FAC alleges that Plaintiff SRG is a German corporation whose principal place of business is in Germany and "is one of the largest scrap metal recyclers globally." FAC, Dkt. 18 ¶ 12. The FAC also alleges that Scholz HK is a company organized under the laws of Hong Kong, and has its principal place of business there. *Id.* ¶ 13. It is further alleged that Scholz HK "is wholly owned by SRG and acts as SRG's sales office for scrap metals into the Chinese and Asian markets." *Id.* It is also alleged that Scholz HK held a 50-percent interest in non-party Guangzhou Xiangjum Metals Company Limited ("GXMC"), to which Scholz HK's parent company, SRG, supplied recycled metal. *Id.* ¶¶ 1, 4-5.

It is alleged that Mr. Zhou is a citizen of China and a resident of California. *Id.* ¶ 14. It is alleged that he is "the managing member of [dismissed defendant Star], the Chairman and President of GXMC, and a trustee of the Zhou and Liu Family Trust." *Id.* It is also alleged that he is the husband of Ms. Liu and the father of Ms. Zhou. *Id.* ¶¶ 15-16.

It is alleged that Ms. Liu is a resident of California, "the supervisor to the Board of GXMC," and the spouse of Mr. Zhou. *Id.* ¶ 15. Ms. Liu is also alleged to be the manager of Defendant Outer Marino. *Id.* ¶ 17.

It is alleged that Ms. Zhou is a resident of California, a member of the board of directors of GXMC, and the daughter of Mr. Zhou. *Id.* ¶ 16.

Finally, it is alleged that Outer Marino is a California LLC whose principal place of business is also in California and that is managed by Ms. Liu. *Id.* ¶ 17.

B. Allegations in the FAC

1. <u>GXMC's Debts</u>

It is alleged that GXMC was established in 2003 "for the purpose of trading scrap metals." *Id.* ¶ 22. Mr. Zhou allegedly owns 50 percent of GXMC, and Scholz HK has owned the other 50 percent since 2007. *Id.* GXMC is allegedly managed by Mr. Zhou and his family members, including Ms. Liu and Ms. Zhou, with Scholz HK acting "as a silent partner." *Id.*

It is alleged that SRG, which is the parent company of Scholz HK, "sold millions of dollars of scrap metal (including copper, brass, stainless steel and other metals) to GXMC and transferred that scrap metal to GXMC, which then processed it and sold reprocessed metals products in China." *Id.* ¶ 24. It is further alleged that, at an unspecified time, GXMC "reported that it had begun to experience financial hardship and had incurred significant losses" and, as a result, stopped paying SRG for the scrap metals GXMC received from SRG. *Id.* ¶¶ 24-25. Although GXMC allegedly does not dispute that it has outstanding financial obligations to SRG, GXMC claims to be unable to fulfill them. *Id.* ¶ 25.

It is next alleged:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

> Unbeknownst to Plaintiffs until December 2019, GXMC's losses and financial difficulties were due to GXMC fraudulently transferring assets and monies to [Defendants]. Specifically Defendants [Mr. Zhou, Ms. Zhou, and Ms. Liu] used their de-facto control of GXMC to cause GXMC to fraudulently transfer assets, without adequate consideration, to themselves, and to companies they owned and controlled. Plaintiffs are informed and believe that GXMC has ceased operations because it siphoned off tens of millions of dollars of GXMC's working capital and assets to [Defendants].

*Id.* ¶ 26.

GXMC allegedly "owes $38,613,132.60 to Plaintiffs in unpaid invoices and $945,004.25 to Scholz HK for the initial equity investment it lost as a result of the siphoning off GXMC's working capital and assets." *Id.* ¶ 27. Although Scholz HK and Mr. Zhou allegedly reached a verbal agreement to resolve the payment of GXMC's financial obligations to Scholz HK, and a written agreement allegedly was drafted and circulated, Mr. Zhou allegedly would not sign the written agreement and then ended settlement negotiations. *Id.* ¶ 29.

2.  Plaintiff's Attempts to Review the Books and Records of GXMC

It is alleged that, in October 2012, a Scholz HK representative requested to conduct a review GXMC's books and records. *Id.* ¶ 28. Although GXMC agreed initially to the request, when the Scholz HK representative arrived at GXMC, he was not permitted to enter the office. *Id.* Since then, Plaintiffs allegedly have made repeated requests to review GXMC's books and records, but have been consistently rebuffed. *Id.* ¶¶ 28, 31.

It is next alleged that, in early 2018, Scholz HK filed an application in the courts of Guangzhou City, China, seeking an order allowing access to, and a review of, the books and records of GXMC. *Id.* ¶ 32. On September 26, 2019, the Guangzhou Intermediate People's Court allegedly approved the application, and granted representatives of Scholz HK the right to access and review -- for a 20-day period -- GXMC's books, records and underlying transactions from January 2008 forward. *Id.* ¶¶ 32, 34.

The FAC alleges that this short time period, combined with GXMC's "lack of cooperation," did not allow Plaintiffs "to obtain all of the information necessary about GXMC's improprieties and the corresponding fraudulent transfers to [Defendants]." *Id.* ¶ 34. However, Scholz HK's review of GXMC's books and records allegedly did "reveal many fraudulent activities," including:

1. "GXMC had incurred large but fictitious shareholder loans to [Mr. Zhou] and [Ms. Zhou]," which "were not disclosed to or approved by the Board, and were fabricated." *Id.* ¶ 35. In addition, the purpose of the loans was not provided, nor was there any proof that Mr. Zhou or Ms. Zhou had transferred any money to GXMC. *Id.*
2. GXMC had fraudulently transferred funds to a British Virgin Islands corporate entity named "Richie Format" that, as Plaintiffs learned through an order by a British Virgin Islands court, was owned and controlled by Mr. Zhou and Ms. Liu. *Id.* ¶¶ 38-45, 49-51.
3. GXMC transferred almost $1 million to former defendant Star, then a real estate development corporation in Los Angeles managed by Mr. Zhou, for which "[t]here is no justification in the records." *Id.* ¶ 46. Star has since been dissolved. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

It is alleged that Defendants used the proceeds of these alleged fraudulent transfers to purchase several vehicles as well as certain real property in California. *Id.* ¶¶ 47-48.

    C.    Basis for Removal

In the Notice of Removal (Dkt. 1), Defendants aver that, when Scholz HK acquired a 50-percent interest in GXMC, it entered into a "Sino-foreign Joint Venture" Agreement for GXMC (the "GXMC JV Agreement"). Dkt. 1 ¶ 8. A copy of it is attached to the Notice of Removal as Exhibit 1. *Id.*; Dkt. 1-1.

Mr. Zhou and Scholz HK are the parties to the GXMC JV Agreement. Dkt. 1 ¶ 9; Dkt. 1-1 at 18. "Chapter 19: Applicable Law" of the GXMC JV Agreement provides: "The formation, validity, termination, performance and dispute resolution of this contract are all governed by the laws of the People's Republic of China." Dkt. 1 ¶ 9; Dkt. 1-1 at 30. "Chapter 20: Dispute Resolution" of the GXMC JV Agreement provides in part:

> All disputes arising from the implementation of this contract or related to this contract shall be settled through friendly negotiations. If negotiations cannot resolve [sic], it shall be submitted to the China International Economic and Trade Arbitration Commission for arbitration in accordance with the arbitration rules of the committee. The arbitration award is final and binding on all parties to the joint venture.

Dkt. 1 ¶ 10; Dkt. 1-1 at 30.

Defendants also allege that Scholz HK signed the GXMC Articles of Association (the "GXMC Articles"). Dkt. 1 ¶ 11. A copy of the GXMC Articles is attached to the Notice of Removal. *Id.*; Dkt. 1-2. The GXMC Articles also include an arbitration provision:

> Any disputes arising from the signing, modification, performance, or termination of this Articles of Association shall be resolved through discussions. If the discussions fail, all parties may initiate arbitration with the China International Economic and Trade Arbitration Commission, and the award shall be final and binding to all parties.

Dkt. 1-2 at 19.

Defendants also allege that, as a supplier of scrap metals to GXMC, SRG entered into a Sale and Purchase Contract with GXMC (the "Sale and Purchase Contract"), which is attached to the Notice of Removal as Exhibit 3. Dkt. 1 ¶ 17; Dkt. 1-3. It also includes an arbitration provision:

> This contract is ruled by English law. The United Nations (UN) rules for sale and purchase of goods shall not apply. All disputes arising from the execution of or in connection with the contract shall be settled through friendly consultation between both parties and be finally settled under the rules of conciliation and arbitration of the international chamber of commerce in London. The award of the arbitration is final and binding upon both parties.

Dkt. 1 ¶ 17; Dkt. 1-3 at 6-7.

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

Defendants allege that, based on these arbitration agreements, in January 2021, they requested that Plaintiffs stipulate to arbitrate their dispute. Dkt. 1 ¶ 23. They also allege that Plaintiffs declined to do so. *Id*.

Defendants argue that removal was proper pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), 9 U.S.C. §§ 201 *et seq. Id*. ¶ 1. To support this position they contend that the arbitration agreements between Plaintiffs and GXMC come within the Convention. *Id*. ¶¶ 29-33. Next, they argue that "[p]ursuant to 9 U.S.C. § 203, '[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States,'" which confers original jurisdiction on district courts. *Id*. ¶ 25 (citing 9 U.S.C. § 203).

Defendants also argue that, pursuant to 9 U.S.C. § 205, which is "'is one of the broadest removal provisions in the statute books,'" "where an action 'pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention, the defendant or defendants may, at any time before trial thereof, remove such action or proceeding' to a district court." *Id*. ¶¶ 26-27 (citing *Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*, No. SACV 12-01379-CJC (ANx), 2012 WL 12878644, at *6 (C.D. Cal. Nov. 2, 2012); 9 U.S.C. ¶ 205)).

**III.    Analysis**

    A.    Legal Standards

        1.    Motion to Remand

A motion to remand challenges the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *see* 28 U.S.C. § 1447(c). In general, a state civil action may be removed only if, at the time of its removal, it is one that initially could have been brought in a federal court. *Id*. § 1441(a). Because federal courts are ones of limited jurisdiction, the removal statute is to be strictly construed; any doubt about the propriety of removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party has the burden of establishing that it was proper to do so. *Id*. "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

        2.    Removal Pursuant to the Convention

The New York Convention is a multilateral treaty. It provides for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention, art. I(1), 21 U.S.T. 2517. Congress approved the Convention through the enactment of Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

The FAA provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. In accordance with those terms, § 205 of the FAA provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

*Id.* § 205.

Although courts generally "strictly construe the removal statute against removal jurisdiction," *Gaus*, 980 F.2d at 566, "the plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011) (citing *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002) ("[E]asy removal is exactly what Congress intended in § 205.")). Section 205 is triggered by "just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Id.* at 1138 (citing *Beiser*, 284 F.3d at 669).

"Section 205 does not include any requirement that, as a prerequisite for removal, the removing party establish that the arbitration agreement is valid and enforceable." *Miller v. Tri Marine Fish Co.*, No. CV 16-02203-JAK (SSx), 2016 U.S. Dist. LEXIS 83936, 2016 WL 3545523, at *14 (C.D. Cal. 2016). Rather, removal is proper "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case." *Infuturia Glob. Ltd.*, 631 F.3d at 1138 (quoting *Beiser*, 284 F.3d at 669) (emphasis in original). *Davis v. Cascade Tanks, LLC* explained this distinction:

> [T]hat the jurisdictional inquiry is separate from the merits of enforcement is required by the text of the Convention and the provisions in which it is implemented. The Convention provides that a court, "when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention art. II(3), 21 U.S.T. 2517. The text contemplates that only a court "seized of" the suit will turn to the question whether the arbitration clause shall be enforced. As used in article II(3), the phrase "seized of" means that the court is "in possession of" the action. *See* 14 *Oxford English Dictionary* 896 (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989); *Black's Law Dictionary* 1524 (Rev. 4th ed.1968). . . . [A] federal court cannot be "seized of an action" under this provision in the absence of federal jurisdiction, which is granted in 9 U.S.C. §§ 203 and 205.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

. . . .

> As implemented, article II(3) must be read such that in the absence of jurisdiction the district court would not be "seized of" the action. It is therefore appropriate to determine whether federal jurisdiction exists before turning to the question whether there is an allowable defense to enforcement; only a court "seized of" a suit related to an arbitration clause covered by the Convention can turn to the question whether the arbitration clause shall be enforced, and only a court with jurisdiction may be seized of the suit. Only once jurisdiction is determined is the court to turn to the enforceability of the arbitration agreement, a question which requires it to consider whether the agreement is "null and void, inoperative or incapable of being performed."

No. 3:13-cv-02119-MO, 2014 U.S. Dist. LEXIS 100958, 2014 WL 3695493, at *11-12, 16 (D. Or. July 24, 2014) (citations and footnote omitted).

Notwithstanding these rules, "the removing party continues to bear the burden of establishing federal jurisdiction." *Freaner v. Valle*, No. 11CV1819 JLS (MDD), 2011 U.S. Dist. LEXIS 132681, 2011 WL 5596919, at *7 (S.D. Cal. Nov. 17, 2011). Thus, the removing party must show that: (i) the arbitration agreement falls under the Convention; and (ii) the agreement relates to the plaintiff's suit. *Id.*; *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, No. CV 15-5099-PSG (JPRx), 2015 U.S. Dist. LEXIS 125199, 2015 WL 5471434, at *4 (C.D. Cal. Sept. 18, 2015).

Even if the removing party shows an arbitration agreement that "relates to" the action, "if it is later determined that there is no binding arbitration agreement," remand may be appropriate. *Miller*, 2016 U.S. Dist. LEXIS 83936, 2016 WL 3545523, at *17. Thus, under those circumstances, 9 U.S.C. § 205 no longer provides a basis for subject matter jurisdiction. *See Beiser*, 284 F.3d at 675 ("The district court thus had jurisdiction under § 205. The correct procedure for Beiser to have followed would have been to respond on the merits to Huffington's motion to compel arbitration. If successful, Beiser then could have moved to remand to the state court.").

B. Timing of the Motions

On May 17, 2021, an Order issued granting Plaintiffs' *Ex Parte* Application to Advance Hearing on Plaintiffs' Motion to Remand. Dkt. 51. Accordingly, Plaintiffs' Motion to Remand was set for hearing on June 14, 2021, and Defendants' Second MTD was continued to July 19, 2021. *Id.* Because the Motion to Remand was scheduled for hearing before the Second MTD, consideration whether the Court should exercise its discretion pursuant to 28 U.S.C. § 1367(c) to remand any state-law claims over which there may be supplemental jurisdiction, is deferred until the consideration of Defendants' Second MTD. *See* Dkt. 38 at 8-9; Dkt. 41 at 15-17; Dkt. 49 at 2-5.

C. Application: Whether Removal Was Proper

Plaintiffs do not dispute Defendants' contention that the arbitration agreements between GXMC and Plaintiffs fall under the New York Convention. *See* Dkt. 38 at 7; Dkt. 49 at 6. Therefore, the only issue is whether these arbitration agreements apply to the claims alleged in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

The Ninth Circuit has adopted the construction by the Fifth Circuit of "relates to" in section 205 "to mean that 'whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement relates to the plaintiff's suit.'" *Infuturia Glob. Ltd.*, 631 F.3d at 1137-38 (quoting *Beiser*, 284 F.3d at 669) (emphasis and internal quotation marks omitted). "Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'" *Quiksilver Greater China Ltd.*, 2012 WL 12878644, at *6 (internal quotation marks omitted) (quoting *Beiser*, 284 F.3d at 669).

Under this broad definition of jurisdiction under 9 U.S.C. § 205, Defendants have provided a sufficient basis for the determination that there is federal subject matter jurisdiction in this matter. Defendants have shown that at least one of the applicable arbitration agreements "fall[s] under the Convention [and] could conceivably affect the outcome of the plaintiff's case." *Id.* (internal quotation marks omitted).

The cause of action for fraudulent transfer relates to the arbitration clause in the Sale and Purchase Contract between GXMC and SRG. This arbitration clause could "conceivably affect the outcome" of Plaintiffs' case if the matter were arbitrated. A "fraudulent transfer" is "[a] transfer made or obligation incurred by a debtor" that the debtor made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). For Plaintiffs to establish a cause of action for fraudulent transfer against Defendants under the California Uniform Voidable Transactions Act ("UVTA"), they must establish that they are creditors of GXMC. *Id.*; CACI § 4200.

The FAC alleges that "Plaintiffs are creditors of GXMC, in that GXMC owes Plaintiffs approximately $38 million." Dkt. 18 ¶ 55. The FAC also alleges that Plaintiffs are creditors of GXMC because "Plaintiffs provided approximately $38 million of scrap metal to GXMC, invoiced GXMC, and received no money in return." *Id.* ¶ 57. Plaintiffs provided that scrap metal to GXMC pursuant to the Sale and Purchase Contract, which establishes a relationship between GXMC and SRG as "Buyer" and "Seller," respectively. Dkt. 1-3 at 2. The arbitration clause in the Sale and Purchase Contract plainly applies to disputes as to whether SRG provided $38-million worth of scrap metal to GXMC. Thus, the clause requires arbitration of "[a]ll disputes arising . . . in connection with the [Sale and Purchase] [C]ontract." *Id.* at 6-7. SRG provided scrap metal to GXMC pursuant to the Sale and Purchase Contract.

The fraudulent transfer cause of action also relates to the GXMC JV Agreement. To support the allegation that the transfers to Defendants were fraudulent or "were made with the intent to hinder, delay and/or defraud Plaintiffs," the FAC alleges that "[t]he transfers were never disclosed to GXMC's 50% shareholder, Scholz HK, and was [sic] instead concealed such that Plaintiffs were required to obtain a court order from a Guangzhou court allowing Plaintiffs to review GXMC's books and records." Dkt. 18 ¶¶ 30, 57-58. GXMC has a disclosure obligation with respect to transfers to Scholz HK because that entity is a 50-percent owner of GXMC pursuant to the GXMC JV Agreement. Therefore, the GXMC JV Agreement also affects and relates to the outcome of this cause of action.

Defendants argue that, "[e]ach of Scholz HK's claims flows from the alleged mismanagement of GXMC and the alleged failure of its joint venture partner to appropriately account for and pay Scholz HK's share of profits." Dkt. 41 at 13. Plaintiffs respond that Defendants have misconstrued their claims as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00293 JAK (RAOx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Scholz Recycling GmBH, et al. v. Zhou Yizhou, et al. | | |

involving "mismanagement," but the claims are based on the allegation that "GXMC was deliberately and surreptitiously stripped of assets, which were then fraudulently transferred to Defendants in California." Dkt. 49 at 7. However, the basis for the claim of alleged fraudulent transfers of GXMC's assets is that they were made in violation of the GXMC JV Agreement and the GXMC Articles. For example, one of the "many fraudulent activities" that the FAC identifies is that "GXMC had incurred large but fictitious shareholder loans to [Mr. Zhou] and [Ms. Zhou]." Dkt. 18 ¶ 35. Plaintiff argues that these loans were fraudulent because they "were not disclosed to or approved by the Board," *id.*, and that they violated the GXMC Articles. Dkt. 1-2 at 14.

The FAC also alleges fraud based on the claim that "GXMC had deposited tens of millions of dollars, in twelve separate transactions, in margin deposits into Chinese banks which generated interest income. . . . Although interest income was generated, no interest income was ever listed in GXMC's books and records." Dkt. 18 ¶ 36. The GXMC Articles require "[t]he financial accounting books . . . [to] record . . . [t]he amount of cash income and expenditure of the joint venture company." Dkt. 1-2 at 16. Thus, this claim is also premised on the GXMC Articles.

Plaintiffs' claims rely on the assumption that the alleged transfer of funds from GXMC to Defendants violated the GXMC JV Agreement or the GXMC Articles. The allegations of fraud arise from these claimed violations. Plaintiffs argue that they have not advanced a breach of contract claim. Dkt. 49 at 7. That they elected not to do so does not affect the conclusion that the fraud claims arise from various alleged violations of the GXMC JV Agreement and the GXMC Articles.

The cause of action for the imposition of a constructive trust also relates to the Sale and Purchase Agreement. Under California law, "[t]he imposition of a constructive trust requires: (1) the existence of res (property or some interest in property); (2) the right of the complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1109, 1140 (C.D. Cal. 2002) (citing *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995)). Plaintiffs' claimed right to the res at issue here arises from the Sale and Purchase Agreement between SRG and GXMC, which establishes a buyer-seller relationship between GXMC and SRG. The arbitration clause in this Agreement requires binding arbitration of "[a]ll disputes arising from the execution of or in connection with the contract." Dkt. 1-3 at 6-7. Clearly, the present dispute as to whether $38 million is owed to SRG is covered by this arbitration clause. SRG transferred scrap metal to GXMC as part of the Sale and Purchase Agreement.

### IV.   Conclusion

For the reasons stated in this Order, the Motion to Remand is **DENIED**. It is undisputed that the arbitration clauses in the GXMC JV Agreement, the GXMC Articles and the Sale and Purchase Contract fall under the New York Convention. Defendants have established that those clauses relate to Plaintiffs' claims. Therefore, removal was proper pursuant to 9 U.S.C. § 205.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | mr |